UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

VERONICA VALENCIA, as Parent and Natural Guardian
of A.M., and VERONICA VALENCIA, Individually,

                    Plaintiff,                       **COMPLAINT**

                                                    26-cv-3630

-against-

KAMAR H. SAMUELS, in his official capacity as
Chancellor of the NEW YORK CITY
DEPARTMENT OF EDUCATION, and the NEW
YORK CITY DEPARTMENT OF EDUCATION,

                    Defendants.
_____X

       Plaintiff **VERONICA VALENCIA**, as Parent and Natural Guardian of **A.M.**[1], and **VERONICA VALENCIA**, Individually ("Plaintiff" or "Parent"), as and for her Complaint against Defendants **KAMAR H. SAMUELS**, in his official capacity as Chancellor of the **NEW YORK CITY DEPARTMENT OF EDUCATION**, and the **NEW YORK CITY DEPARTMENT OF EDUCATION** (collectively, also referred to as "DOE"), alleges the following:

## PRELIMINARY STATEMENT

1.     This action is brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, to ensure A.M.'s (also hereinafter referred to as "Student") right to a free appropriate public education ("FAPE").

2.     The IDEA offers federal funds to states in exchange for a commitment to provide a FAPE to all children with physical and/or intellectual disabilities. *See* 20 U.S.C. § 1401(3)(A)(i) (listing covered disabilities).

---

[1] Although the full name of the Parent is used in the Complaint, pursuant to the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g) and 34 C.F.R. Part 99, the Student's initials are used to protect their privacy.

2

3. As defined in the IDEA, a FAPE includes special education and related services— instruction tailored to meet a child's unique needs and supportive services sufficient to allow a child to benefit from the instruction. 20 U.S.C. § 1401(26) and (29).

4. An eligible child acquires a substantive right to such an education once a state accepts IDEA's financial assistance from the Federal Government.

5. The Student, A.M., suffers from a traumatic brain injury that adversely affects his educational abilities and performance.

6. On July 9, 2025, Plaintiff filed a Due Process Complaint ("DPC") against DOE alleging, among other things, that DOE did not offer her child a FAPE for the 2025-2026 extended school year ("ESY"). A true and correct copy is attached as **Exhibit 1**.

7. The DPC was assigned IHO Case No. 297420.

8. On November 17, 2025, Impartial Hearing Officer ("IHO") Kia Moore issued a Findings of Fact and Decision ("FOFD") in Case No. 297420 ("FOFD 297420"), finding that DOE offered Student a FAPE for the 2026-2026 ESY, and further finding, for appeal purposes, that the International Institute for the Brain ("iBRAIN") was not an appropriate unilateral placement, and that the equities did not favor the Parent.  A true and correct copy is attached as **Exhibit 2**.

9. On November 24, 2025 Plaintiff filed a Notice of Intention to Seek Review of IHO Moore's FOFD.

10. On December 18, 2025, Plaintiff filed a Request for Review ("RFR") of IHO Moore's FOFD.

11. In the RFR, Plaintiff alleged, *inter alia*, that IHO Moore erroneously found that Defendants offered a FAPE to A.M. for the 2025-2026 ESY.

12. Plaintiff's appeal to the State Review Officer ("SRO") was timely in all respects.

13. On January 2, 2026, 2025, SRO Sarah L. Harrington dismissed Plaintiff's appeal on procedural grounds, by letter.

14. SRO Harrington dismissed the appeal because the RFR was not signed by an attorney or party to the proceeding.

15. A true and correct copy of SRO Harrington's letter dismissal of Plaintiff's Appeal is attached as **Exhibit 3**.

16. SRO Harrington erred in dismissing Plaintiff's timely appeal on the basis of a procedural concern, especially where no harm was incurred to Defendants.

17. Plaintiff seeks an Order (1) vacating SRO Decision 25-860; (2) reversing and modifying FOFD 297420; (3) declaring that DOE failed to offer A.M. a FAPE for the 2025- 2026 ESY, (2) finding that A.M.'s unilateral placement at the International Academy for the Brain ("iBRAIN"), and related services, including special transportation and nursing, was appropriate during the 2025-2026 ESY, and (4) finding that equitable considerations favor total reimbursement/direct payment for A.M.'s educational program/placement at iBRAIN for the 2025-2026 ESY, including related services, special transportation and nursing, pursuant to the terms of the agreements, including any applicable late fees and interest.

18. Plaintiff seeks funding in the form of direct payment to Sisters Travel for the Student's placement for the 2025-2026 ESY, pursuant to the terms of the provider contracts, including any applicable late fees and interest.

19. Plaintiff further seeks funding in the form of direct payment to B&H Healthcare Services ("B&H") for the Student's placement for the 2025-2026 ESY, pursuant to the terms of the provider contracts, including any applicable late fees and interest.

20. In the alternative, Plaintiff seeks an Order vacating SRO Decision 25-860 and remanding the matter to the SRO for adjudication on the merits.

21. This Complaint is filed under the IDEA, New York State's implementing laws and regulations, 8 N.Y.C.R.R. § 200 et seq., and Article 89 of the New York Education Law, N.Y. Educ. Law § 4401 (McKinney), et seq., and applicable case law and public policy.

### JURISDICTION AND VENUE

22. This case arises under a federal statute, the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq., and United States Department of Education regulations promulgated under authority granted by statute. 34 C.F.R. Part 300.

23. This Court has subject-matter jurisdiction under 20 U.S.C. § 1415(i)(2), providing for jurisdiction and a right of action in this Court for any party "aggrieved by the findings and decision" of an Impartial Due Process Proceeding.

24. Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

25. To the extent that this case involves questions about special education rights under New York State Law, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

26. This Court may grant a Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Fed. R. Civ. P. 57.

27. Under 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York, as Defendants KAMAR H. SAMUELS, in his official capacity as Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION, maintain a place of business in New York County.

28. If successful, Plaintiff seeks reasonable attorneys' fees as part of the costs that may be

awarded to the parent of a child with a disability as a "prevailing party" in the underlying administrative proceedings conducted under the IDEA. 20 U.S.C. § 1415(i)(B)(I); see also 34 C.F.R. § 300.517(a)(l)(i).

## **THE PARTIES**

29. Plaintiff A.M. was six (6) years old at the start of the 2025-2026 ESY.

30. A.M. is a student with a disability, as defined by 20 U.S.C. § 1401(3).

31. A.M. is entitled to receive a FAPE and related services from Defendant DOE.

32. Plaintiff VERONICA VALENCIA is A.M.'s Parent and Natural Guardian.

33. Plaintiff lived in the City of New York at all relevant times here.

34. Plaintiff resides in Defendants' school district.

35. Defendant New York City Department of Education is and was, at all material times, a corporate body that manages and controls the educational affairs of the New York City Public Schools, under Article 52 of the New York State Education Law, CLS Educ. Law § 2550 et seq.

36. Defendant New York City Department of Education is the local educational authority ("LEA"), as defined by 20 U.S.C. § 1401 and 34 C.F.R. § 300.28, responsible for providing A.M. with a FAPE.

37. New York State and DOE have established policies and procedures, both written and informal, concerning the IDEA's implementation.

38. DOE receives federal funding under the IDEA. 20 U.S.C. § 1412.

39. DOE must provide A.M. with an Individualized Education Program ("IEP") for each school year.

40. Because DOE receives federal funding under the IDEA, it must comply with the statute's provisions, 20 U.S.C. § 1412.

41. Defendants' principal place of business is located at 52 Chambers Street, in the County and State of New York.

42. The New York City Department of Education's Impartial Hearing Order Implementation Unit is located at 65 Court Street, Room 1503, Brooklyn, N.Y. 11201.

43. DOE is responsible for providing a FAPE to all students with disabilities, including A.M., who live in the Defendants' school district under statutory rights arising under IDEA, its implementing regulations, and the applicable Part 200 Regulations implemented by New York State, to the extent such regulations are not inconsistent with the IDEA.

**FACTUAL ALLEGATIONS**

44. Plaintiff brings this action under the IDEA to recover the costs of A.M.'s placement at iBRAIN during the 2025-2026 ESY, including tuition, and related services, such as special transportation and nursing, and late fees, per the respective service contracts.

45. Congress enacted the IDEA to ensure that students with disabilities, like A.M., have meaningful access to an appropriate public education.

46. States that participate in the IDEA receive federal funds and agree to provide a FAPE to all children with disabilities in the state and to comply with the IDEA's procedural and substantive mandates.

47. New York State has chosen to participate in and implement the IDEA framework.

48. New York has established procedures for providing special education services to children with disabilities, outlined in N.Y. Educ. Law § 4401 (McKinney) *et seq*.

49. Each year, the State Educational Agency ("SEA") issues IDEA Part B funds to each LEA

7

that has provided assurances under IDEA.

50. Upon information and belief, the New York City Department of Education receives funding under IDEA Part B based on the "child-count" method, which allows the LEA to claim a specific amount of money per student with a qualifying disability.

51. Upon information and belief, the DOE has received IDEA Part B funds earmarked for A.M.'s education relative to the 2025-2026 ESY.

52. The IDEA explicitly requires the DOE to fund A.M.'s education.

53. According to Plaintiff's record, the DOE has already partly paid for A.M.'s tuition and related services, including special transportation and nursing, under pendency for the 2025-2026 ESY.

54. The remaining dispute concerns the remaining payments owed to Plaintiff for A.M.'s placement for the 2025-2026 ESY, late fees and the SRO and IHO's erroneous conclusions.

55. The primary mechanism for implementing IDEA's mandate of a FAPE is the IEP, as defined in 20 U.S.C. §§ 1401(14) and 1414(d).

56. An IEP is a written statement prepared for each child with a disability that sets forth the special education and related services, supplementary aids and services, and program modifications or supports to be provided to the child, on behalf of the child, to enable the child to achieve a comprehensive set of annual goals and short-term objectives.

57. A.M. suffers from a brain injury resulting in severe impairments in the following areas: cognition, language, memory, attention, reasoning, abstract thinking, judgment, problem solving, sensory, perceptual and motor abilities, psychological behavior, physical functions, information processing, and speech.

58. These impairments adversely affect A.M.'s educational skills and performance.

59. A.M. is non-verbal and non-ambulatory.

60. A.M. has highly intensive management needs, requiring a significant degree of individualized attention and intervention.

61. A.M. requires a small, highly-structured classroom offering an educational program delivered via 1:1 instruction model, with full-time 1:1 paraprofessional and school nurse, as needed, during the school day and while in transit to and from all school activities and activities of daily living.

62. A.M. also requires an extensive regimen of related services, including occupational therapy ("OT"), physical therapy ("PT"), speech and language therapy ("SL"), assistive technology ("AT"), vision education services (VES), hearing education services (HES), and music therapy ("MT") to benefit from special education instruction.

63. Because of the extensive level of services that A.M. requires, it is necessary for A.M. to attend a program which operates on an extended school day within an ESY to prevent regression.

64. A.M. requires a two-person transfer to and from his wheelchair or other repositioning.

65. A.M. began attending iBRAIN during the 2021-2022 ESY.

66. A.M. attended iBRAIN during the 2025-2026 ESY.

67. iBRAIN employs specialized teachers, nurses, and therapists to provide an extended school day, extended school year, and education to children with brain injuries or brain-based disorders.

68. In April 2025, the DOE convened a Committee on Special Education ("CSE") to develop A.M.'s Individualized Education Program ("IEP") for the 2025-2026 SY.

69. The CSE recommended a 12:1:(3+1) specialized classroom in a District 75 school, with related services of OT, PT, SL, and AT, as well as a 1:1 paraprofessional and 1:1 School Nurse.

70. The Parent asserts that she did not receive a "prior written notice" or "school location letter", which DOE purportedly sent.

71. Accordingly, Plaintiff did not have the required amount of time necessary to investigate the appropriateness of the school for A.M.'s needs.

72. The CSE failed to recommend updated evaluations in all of A.M.'s areas of suspected disability.

73. The CSE also failed to recommend music therapy by a board-certified music therapist, which A.M. requires to access her education and make meaningful progress, despite the Parent's advocacy for this service.

74. The CSE's decision not to recommend services such as music therapy, despite their necessity for A.M. to receive a FAPE, was predetermined.

75. On June 16, 2025, the Parent provided the DOE with a Ten-Day Notice of her intent to unilaterally enroll A.M. at iBRAIN for the 2025-2026 ESY and seek public funding. This notice clearly articulated the Parent's concerns with the DOE's proposed IEP and her intention to seek reimbursement for iBRAIN's services.

76. iBRAIN provides A.M. with the intensive 1:1 instruction, related services (including music therapy), and the related support he requires, thereby offering a program that is specifically tailored to A.M.'s unique needs and is designed to provide her with a FAPE.

77. At iBRAIN, A.M. is in a 6:1:1 class, which is best suited to his highly intensive management needs.

10

78.   On July 9, 2025, Plaintiff filed a DPC with the DOE, thereby initiating an administrative Due Process Proceeding to secure funding for iBRAIN tuition, and related services, for 2025-2026 ESY and other relief under the IDEA.

79.   In the DPC, Plaintiff alleged, among other things, that the DOE denied A.M. a FAPE for the 2025-2026 ESY; that iBRAIN was an appropriate unilateral placement for A.M.; and that equities favored an award of full funding for A.M.'s placement at iBRAIN, including tuition and special transportation for the 2025-2026 ESY.

80.   The DPC highlighted DOE's failure to conduct adequate evaluations in all areas of A.M.'s suspected disability.

81.   The DPC was assigned IHO Case No. 297420.

82.   IHO Moore was appointed to the case.

83.   A hearing was held on September 30, 2025.

84.   On November 17, 2025, IHO Moore issued a FOFD, concluding that the DOE had offered A.M. a FAPE for the 2025–2026 ESY, that iBRAIN was not an appropriate placement, and that the equities did not favor reimbursement.

85.   IHO Moore further denied Plaintiff's request for updated evaluations in order to ascertain the status of A.M.'s disability.

86.   The IHO reached this conclusion despite acknowledging that the DOE's program lacked the provision of, *inter alia*, 1:1 nursing, both in school and while traveling, climatized transportation and limited travel time, or music therapy.

87.   The IHO found that the Parent's refusal to be cross-examined during the hearing warranted a negative inference regarding equitable considerations.

88.   The IHO erred in addressing the Parent's transportation-related FAPE claims, specifically

11

finding that the DOE's recommended transportation—lacking a 1:1 travel nurse, limited travel time, lacking air-conditioning—was appropriate for a student with A.M.'s medical needs, mobility impairments, and need for two-person transfers.

89. IHO Moore similarly erred in finding that DOE's recommendation for only a school nurse, not 1:1 nursing, was appropriate despite A.M.'s medical needs.

90. Plaintiff timely appealed IHO Moore's decision, filing a Notice of Intention to Seek Review on November 24, 2025.

91. On December 18, 2025, Plaintiff timely filed a Request for Review ("RFR").

92. In the RFR, Plaintiff requested that the SRO find that (1) the DOE denied the Student a FAPE for the 2025-2026 ESY; (2) iBRAIN was an appropriate unilateral placement for A.M.; and (3) equitable considerations support directing the DOE to fund Student's tuition and related services, including transportation at iBRAIN.

93. Plaintiff further requested that the SRO reverse the IHO's finding that DOE had not failed to provide a FAPE by denying Plaintiff's request for evaluation.

94. Plaintiff's appeal before the SRO was given Case No. 25-860.

95. On January 2, 2026, SRO Harrington dismissed Plaintiff's appeal on procedural grounds ("SRO Decision 25-860").

96. The SRO asserted that Plaintiff's appeal must be rejected because the RFR was not signed by an attorney or party to the proceedings.

97. The SRO had the discretionary authority to hear the appeal on the merits despite this procedural defect.

98. DOE was on notice of the appeal, as exemplified by their filing a request for an extension

on December 30, 2025.

99. The SRO failed to hear Plaintiff's appeal on the merits.

100. The instant federal action is an appeal of SRO Decision No. 25-860.

101. SRO Decision No. 25-860 is contrary to evidence and law.

102. A.M. has been denied a FAPE by DOE, iBRAIN is an appropriate placement, and equitable considerations support the award of direct funding for A.M.'s placement at iBRAIN, including tuition and related services, such as special transportation and nursing, for the 2025-2026 ESY.

103. IHO Moore's determinations in her FOFD are legally defective because they rely on an erroneous application of the IDEA, relevant case law, New York State Education Law, and erroneous findings.

104. SRO Harrington' letter dismissal of Plaintiff's appeal in SRO Case No. 25-860 is legally defective and constitutes, *inter alia*, a denial of Plaintiff's due process right under the IDEA, relevant case law, and New York State Education Law.

## AS AND FOR A FIRST CAUSE OF ACTION

### *SRO Decision No. 25-860 Should Be Vacated*

105. Plaintiff repeats, reiterates, and reaffirms each allegation set forth above as if more fully set forth herein.

106. SRO Harrington's dismissal of the appeal must be vacated because it denies Plaintiff of her due process rights under the IDEA, and relevant state and federal statute.

107. The SRO dismissed Plaintiff's appeal for failure to comply with procedural requirements set in the New York State Regulations regarding the Office of State Review ("OSR").

108. The SRO dismissed Plaintiff's appeal, citing the absence of a signature by an attorney or

party and the lack of an affidavit of service, as required by 8 NYCRR 279.8(a)(4)

109. Under New York State law, office failure constitutes a recognized good faith excuse for default or delay, provided however, that the explanation for such failure is neither vague nor amorphous but instead is sufficiently factually detailed.

110. Where it is obvious that no intent to abandon prosecution is extant, discretion should be exercised in favor of disposition on the merits.

111. Also under consideration is whether or not the delay or default was either intentional or of sufficient magnitude to work any prejudice to the opposing party.

112. The SRO had the discretion to grant Plaintiff leave to amend her RFR in order to preserve her appeal.

113. This procedural noncompliance did not hurt or otherwise affect the rights of Defendants in the action.

114. DOE was on notice of the appeal, as exemplified by their filing a request for an extension on December 30, 2025.

115. The dismissal deprived Plaintiff of meaningful access to appellate review, violating procedural due process under the fourteenth amendment and the IDEA, which guarantees parents the right to challenge decisions affecting their child's education.

116. The SRO's rigid application of procedural rules, without considering the substantive merits of the appeal, constitutes a denial of due process, particularly given the significant issues raised regarding the provision of a FAPE.

117. The SRO's decision must thus be vacated as it improperly and arbitrarily dismissed Plaintiff's timely RFR without consideration on the merits.

118. Vactur of SRO Decision No. 25-860 is necessary to ensure that A.M. receives the

14

protections guaranteed by the IDEA and to remedy the harm caused by the DOE's failure to provide an appropriate program.

119. In the alternative, Plaintiff is entitled to an Order remanding the matter to the SRO for adjudication on the merits.

## AS AND FOR A SECOND CAUSE OF ACTION

### *The Findings of IHO Moore's FOFD Should Be Reversed and Modified*

120. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

121. FOFD 297420 must be modified because it rests on legal errors, misapplied standards, and factual findings that are inconsistent with the record developed before the IHO.

122. The IHO erred in finding that the District provided A.M. with a FAPE for the 2025-2026 school year.

123. The IHO found that DOE offered A.M. a FAPE, despite extensive evidence demonstrating that the DOE's IEP was not reasonably calculated to enable A.M. to make progress appropriate in light of his circumstances.

124. The IHO's FAPE determination on all issues must be modified because it is inconsistent with the IDEA's substantive standard, which requires an IEP to be reasonably calculated to enable progress appropriate in light of the child's circumstances.

125. The IHO improperly relied on the presumption that the District's proposed placement was capable of implementing the Individualized Education Program (IEP), despite Parent's assertion that she did not receive adequate notice of the placement and was unable to tour the school.

126. The IHO inappropriately shifted the burden to the Parent to prove non-delivery of the School Location letter and Prior Written Notice, and drew an adverse inference from her

15

absence, rather than requiring the District to definitively prove effective communication as required by the IDEA's procedural safeguards. 34 C.F.R. § 300.503; 8 N.Y.C.R.R. § 200.5(a); (c).

127. The IHO erred in finding that DOE's placement was capable of providing A.M.'s educational and related services *without the implementation of an extended school day*.

128. The IHO failed to adequately consider the Parent's concerns regarding, *inter alia*, the lack of an extended school day, music therapy, updated evaluations, and adequate nursing and transportation services, both in and out of school, which were necessary to meet A.M.'s unique needs.

129. The IHO's conclusion that the omission of music therapy did not deny A.M. a FAPE must be modified, because the SRO failed to apply the correct legal standard for related services and ignored evidence that music therapy addressed needs not met by any other service in the DOE's program.

130. The IHO erred in finding that DOE offered A.M. a FAPE despite DOE's failure to recommend medically-necessary transportation accommodations, including a 1:1 travel nurse, limited travel time, air-conditioning, and individualized safeguards required for a student with A.M.'s medical conditions and need for two-person transfers.

131. The IHO had authority to make findings regarding the need for nursing services based on the hearing record, and the parent presented sufficient information to permit a determination of the student's transportation and nursing needs in order to access a FAPE without treating purportedly incomplete or missing forms as dispositive.

132. The IHO's decision must be modified because it accepted the DOE's reliance on incomplete transportation medical accommodation, rather than requiring the DOE to

conduct updated evaluations or consult with medical professionals before denying essential transportation and nursing supports.

133. The IHO failed to meaningfully address Plaintiff's concerns with A.M.'s grouping needs and the impact of staffing ratios on the delivery of instruction and related services.

134. The IHO erroneously treated a 6:1:1 program as equivalent to a 12:1:4 program on the theory that both result in "no more than three students per staff," even though that equivalence ignores material differences in staffing composition and instructional support.

135. The IHO's adverse inference against the Parent for not testifying, despite the Parent's lawful refusal, further undermined the fairness of the hearing and violated due process.

136. The IHO's decision must also be modified because it failed to address the DOE's procedural violations, including its failure to conduct updated evaluations

137. The IHO further erred in finding that the private school placement was not appropriate under the second prong of the *Burlington/Carter* analysis.

138. The IHO's determination was based on a selective and incomplete review of the record, which included progress reports and a detailed educational plan and improperly imposed a maximization standard not required under the *Burlington/Carter* test.

139. The record establishes that iBRAIN is an appropriate placement, as its schedule provides functionally similar instructional time, and the DOE's own proposed IEP was explicitly based on the iBRAIN IEP while mirroring its related services in frequency and duration.

140. IHO Moore also erred in determining iBRAIN is not appropriate because the evidence does not show that the Student has access to neurotypical students.

141. The IHO improperly denied the unilateral placement as inappropriate based on elements that should not have been considered, where those elements were only in the record due

17

to the IHO's failure to adhere to required timelines for issuing a decision.

142. The IHO arbitrarily concluded that the unilateral placement providing no more than two hours of instruction per day could not provide progress, despite that being, legally mandated, a perfectly fine amount, and despite the hearing record reflecting that, in any event, A.M. usually receives more instructional hours each day.

143. The IHO improperly treated the level at which instruction was delivered, characterizing it as "Prekindergarten", as a basis to find the unilateral placement inappropriate.

144. IHO Moore's reliance on assessment levels is facially inapt and fails to reflect the individualized inquiry required under the IDEA.

145. The appropriate unilateral placement inquiry turns on whether the placement is specially designed to meet the child's unique needs and provides educational benefit, not whether it mirrors typical grade-level expectations for nondisabled peers.

146. The IHO improperly shifted the focus of the appropriateness from whether the program was individualized and reasonably calculated to enable the student to make progress in light of the student's circumstances, to arbitrary assessment classifications which do not apply to A.M. in light of his circumstances.

147. By relying on broad, non-specific developmental benchmarks, the IHO failed to meaningfully engage with the record evidence concerning A.M.'s unique disabilities and corresponding educational needs.

148. The record demonstrates that iBRAIN's instruction was individualized and geared toward A.M.'s needs and supported meaningful progress.

149. The IHO's decision must further be modified because it failed to analyze the equities under the third prong of the *Burlington/Carter* test.

150. The record establishes that the equities favor the Parent, as she participated in all aspects of the IEP process, and the DOE failed to convene a timely resolution meeting – thereby compelling the Plaintiff to initiate a DPC.

151. The cumulative effect of these errors requires reversal and modification of FOFD 297420 to reflect that the DOE denied A.M. a FAPE for the 2025–2026 extended school year.

152. Plaintiff is entitled to an order modifying the findings in IHO Moore's FOFD to:

 a. reverse the IHO's FAPE determination;
 b. find that the DOE denied A.M. a FAPE;
 c. Find that iBRAIN was an appropriate unilateral treatment;
 d. find that the equities favored the Parent; and
 e. direct the DOE to fund A.M.'s placement at iBRAIN, including tuition, supplemental related services, and special transportation pursuant to the contracts.

153. In the alternative, Plaintiff is entitled to an Order remanding the matter to the SRO for adjudication on the merits.

154. Reversal and modification of FOFD 297420 is necessary to ensure that A.M. receives the protections guaranteed by the IDEA and to remedy the harm caused by the DOE's failure to provide an appropriate program.

## AS AND FOR A THIRD CAUSE OF ACTION

### *Plaintiff Is Entitled to Relief Under the IDEA and New York Education Law*

155. Plaintiff reiterates, repeats, and reaffirms each allegation set forth above as if more fully set forth herein.

156. Defendants are legally responsible for ensuring compliance with the New York Education Law and IDEA within New York City.

157. Defendants have denied, and are denying, the rights of Plaintiff and A.M. by failing to

fully reimburse/fund A.M.'s educational program/placement at iBRAIN, as required under the IDEA, timely or otherwise for the 2025-2026 ESY, and will continue to do so in the future without Court intervention.

158. Defendants have acted with deliberate indifference by implementing policies, practices, and customs that have resulted in violations, despite being notified that their actions have caused the violations and their failure to correct them. These policies, practices, and customs constitute Defendants' *de facto* unlawful, illegal, and improper policies.

159. Plaintiff's rights under the New York Education Law are enforceable under N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k)(3), and the IDEA, as well as under this Court's equitable powers.

160. As a result of these violations, Plaintiff is entitled to injunctive and declaratory relief, an order requiring DOE to directly fund the special transportation for the 2025-2026 ESY pursuant to the contract, including any applicable late fees and interest, and other equitable relief from this Court, as well as costs and attorneys' fees.

**AS AND FOR A FOURTH CAUSE OF ACTION**

*Violation of IDEA Procedural Safeguards – Failure to Ensure a Fair and Impartial Hearing*

161. Plaintiff reiterates, repeats, and reaffirms each allegation set forth above as if more fully set

forth herein.

162. The DOE violated the Student's rights under 20 U.S.C. §1415(f) and 34 C.F.R. §300.511 by participating in an impartial hearing process that was not conducted in accordance with IDEA's procedural safeguards.

163. In the prior matter involving this Student (Case No. 297420), the IHO expressly stated that

20

the decision was based on the Parent's absence rather than the evidentiary record, noting that "Parent's refusal to testify… hurt their case because there was information that only the Parent was able to provide" and that the IHO was "left with gapes … that [she] could only reconcile through guessing."

164. These statements demonstrate that the IHO relied on speculation and punitive inferences rather than evidence, depriving the Parent of a fair hearing and violating the Student's procedural rights, in violation of the IDEA and New York Education Law.

## AS AND FOR A FIFTH CAUSE OF ACTION

*Improper Burden Shifting in Violation of 8 NYCRR 200.5(j)(4) and* **Schaffer v. Weast**

165. Plaintiff reiterates, repeats, and reaffirms each allegation set forth above as if more fully set forth herein.

166. DOE further violated IDEA by benefiting from an IHO decision that improperly shifted the burden of proof to the Parent.

167. Although the IHO acknowledged that "the District bears the burden here," the decision repeatedly faulted the Parent for not providing evidence and used the Parent's absence as the basis for upholding DOE's case.

168. This conduct constitutes an unlawful burden shift in violation of *Schaffer v. Weast*, 546 U.S. 49 (2005), and 8 NYCRR 200.5(j)(4).

169. This unlawful burden shifting materially impeded the Parent's and Student's rights under the IDEA.

## AS AND FOR A SIXTH CAUSE OF ACTION

*Decision Based on Extra-Record Factors in Violation of 20 U.S.C. §1415(f)(3)(E)*

170. Plaintiff reiterates, repeats, and reaffirms each allegation set forth above as if more fully

21

set forth herein.

171. DOE violated IDEA by relying on an IHO decision that was not based solely on the evidence presented.

172. The IHO repeatedly relied on conjecture, stating, for example, "[i]t is hard to fathom why the Student would need an extended school day" and "[t]here is no way to fathom that this Private School is providing… educational benefit."

173. These statements show that the IHO substituted personal assumptions for evidence, in violation of 20 U.S.C. §1415(f)(3)(E), which requires decisions to be based strictly on the record.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### *Misapplication of Legal Standard for Unilateral Placement – Substantive Violation of the IDEA*

174. Plaintiff reiterates, repeats, and reaffirms each allegation set forth above as if more fully set forth herein.

175. The DOE violated IDEA by relying on an IHO decision that applied an incorrect legal standard to the appropriateness of the unilateral placement at iBRAIN.

176. The IHO required evidence such as class schedules, attendance logs, teacher credentials, and mainstreaming opportunities—none of which are required under *Burlington/Carter* or *Gagliardo*.

177. The IHO further stated that "there is no way to fathom" that the Student received educational benefit, despite evidence of progress.

178. This misapplication of law constitutes a substantive violation of IDEA.

22

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### *Denial of Statutory Right to Appeal – Violation of 20 U.S.C. §1415(g)*

179. Plaintiff reiterates, repeats, and reaffirms each allegation set forth above as if more fully set forth herein.

180. DOE further violated IDEA by benefiting from the State Review Officer's improper rejection of the Parent's appeal.

181. The OSR letter dated January 2, 2026, states that the appeal was rejected because it was "not signed" and lacked an affidavit of service, and that "no further action will be taken."

182. The OSR also referenced prior "warnings" to counsel and refused to permit amendment.

183. However, the OSR failed to identify with specificity any such prior warnings that would justify dismissal.

184. Neither had the OSR or the SRO previously provided clear notice to the parties that any further deficiency would result in dismissal of the appeal or that leave to amend would be categorically denied.

185. In the absence of such notice, the refusal to permit amendment constituted an arbitrary and capricious exercise of discretion and deprived Plaintiff of a meaningful opportunity to be heard.

186. The SRO's dismissal of the Parent's appeal on purely technical grounds deprived the Parent of the statutory right to appellate review under 20 U.S.C. §1415(g), constituting an independent procedural violation that further impeded the Parent's rights.

## AS AND FOR A NINTH CAUSE OF ACTION

### *Attorneys' Fees*

187. Plaintiff repeats, reiterates, and reaffirms each allegation set forth above as if more fully

23

set forth herein.

188. In any action or proceeding brought under the IDEA, a court may award reasonable attorneys' fees as part of the costs to a "prevailing party" who is the parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B)(l) and 34 C.F.R. § 300.517 (a)(l)(i).

189. Should Plaintiff prevail here, Plaintiff would be the prevailing party under IDEA.

190. Should Plaintiff prevail here, as the Parent of a child with a disability, she will have prevailed in her action/proceeding brought against DOE under the IDEA.

191. At all relevant times referenced herein, Plaintiff was represented by the Liberty & Freedom Legal Group, Ltd., a nonprofit law firm which represents disabled students and their families in administrative and judicial proceedings brought under the IDEA.

192. Should Plaintiff prevail in this federal action, as the prevailing party in the administrative proceedings brought under IDEA, she may seek reasonable attorneys' fees and costs.

193. As the prevailing party, she may also recover attorneys' fees for work performed on the fee application process.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

i.   Conduct an independent, *de novo* review of the administrative record;

ii.  Vacate the January 2, 2026, SRO Decision 25-860, in which the SRO dismissed Plaintiff's Request for Review;

iii. Reverse and modify IHO Moore's November 17, 2025 FOFD in Case No. 297420.

iv.  Declare that Defendants did not provide A.M. with a FAPE during the 2025-2026 ESY;

v.   Declare that iBRAIN, including related services, such as special transportation and nursing, was an appropriate unilateral placement for A.M. during the 2025-2026 ESY;

vi.  Declare that the equities favored Plaintiff's request for total funding for A.M.'s educational program/placement at iBRAIN for the 2025-2026 ESY, including the cost of tuition, related services, special transportation and nursing services, pursuant to the contracts,

24

including any applicable late fees and interest;

vii.    Order Defendants to directly and fully fund the outstanding amounts of A.M.'s educational program at iBRAIN and related services, including special transportation and nursing, per the Plaintiff's contract with the transportation provider, including any applicable late fees and interest;

viii.    In the alternative, vacate the January 2, 2026, SRO Decision 25-860, and order a remand before the SRO for adjudication of Plaintiff's claims on the merits.

ix.    Direct Defendants to pay for the costs and expenses of maintaining this action before the IHO and SRO, under 20 U.S.C. § 1415;

x.    Grant Plaintiff leave to submit a fee application under the IDEA;

xi.    Declare Plaintiff to be prevailing party for the purpose of the IDEA's fee-shifting provision, 20 U.S.C. § 1415(i)(3)(B)(I) and 34 C.F.R. § 300.517 (a)(1)(i), should Plaintiff prevail in the instant action;

xii.    Direct Defendants to pay for the costs and expenses of maintaining this action, including reasonable attorneys' fees for bringing and maintaining this action; and

xiii.    Grant such other, further, and different relief as this Court may deem just, proper, and equitable.

Dated:        May 1, 2026
               New York, NY


                              Respectfully Submitted,

                              Liberty & Freedom Legal Group
                              *Attorneys for Plaintiff*


                    By:        /s/    ***Nicole Lancia***
                              Nicole Lancia, Esq.
                              105 East 34th Street, #190
                              New York, NY 10016
                              (646) 850-5035
                              nicole@pabilaw.org